May it please the Court, Gennaro Savistano on behalf of Plaintiff's Appellants. Your Honors, we have here a couple of examples of reversible error by the District Court. The first of which is the dismissal of Plaintiff's direct-to-consumer failure-to-warn claim. Under Wisconsin law, a manufacturer has a duty to warn of dangers it knew or should have known about its products. Here, a jury could have certainly found that Defendant Appellee Zimmer knew or should have known that the implant could have failed prematurely if there were less than two pads of cement used for the tonally replacement at issue here. Zimmer's own expert, Dr. Dearborn, testified to as much unequivocally, unambiguously. And we submit that it was error for the District Court here to adopt the learned intermediary doctrine. In doing so, the Court relied upon an Illinois Supreme Court case which, if you delve into it, in turn relied upon Georgia, Indiana, and Virginia substantive law, not Wisconsin law. Well, most other states follow that doctrine. What about Wisconsin would cause it to go in the opposite direction? Your Honor, if 49 other states adopted that doctrine, it wouldn't be relevant under Wisconsin law. Here we have an intermediate appellate court in Wisconsin that said we declined to address whether Wisconsin law. Right. Just declining to address it is not, doesn't inform the question one way or the other. It's just a wash. I agree. I agree. That's why I'm asking for certification. Right. But I'm asking you, what about Wisconsin law would make it different from all of the other states that have adopted the learned intermediary doctrine? We have to have a reason to suspect that Wisconsin would go another direction before we would certify. I disagree, Your Honor. I'm advocating for the status quo. They're advocating for a swooping change of common law principles. So you might want to ask my adversary why Wisconsin law would adopt and overturn years and years. It's not overturning anything. It certainly is. It's a blank slate. Wisconsin hasn't addressed this. And so you have to persuade us that there's some reason to think that Wisconsin would strike off in a different direction when squarely confronted with this issue. The State Supreme Court has never been confronted with this. It's never hinted at it. I couldn't agree more, Your Honor. That's the very reason that I wouldn't advocate the common law. So why should we suspect that the court would do something different? Because all the pattern jury instructions, all the history of Wisconsin law, as you know, holds. It doesn't address this issue. So what about Wisconsin law of strict products liability, failure to warn doctrine, suggests that it would go in a different direction? Your Honor. Does Wisconsin take a different view of failure to warn cases and products liability? I'm not advocating for that, Your Honor. What I'm saying is that if that is the doctrine that should apply under Wisconsin Supreme Law, then that argument should be taken to the state legislature or to the Supreme Court. I understand that that's the argument that you're making, but I'm asking you to identify some unique feature of Wisconsin products liability law that would cause us to think that there's a real serious question here about whether Wisconsin would follow the clear trend in every other jurisdiction that has addressed this question. I'm not actually – I don't have a products liability PLA clause of action anymore. It's a failure to warn. That's a species of 4028. Right, under common law negligence principles. And that's the lead that I'm standing on. I understand your concern, but the history of Wisconsin substantive law, as you know well, certainly provides that a manufacturer has a duty to warn. And what I'm asking is that if there's going to be some sort of change or new doctrine that substantially alters that, it's for the Supreme Court or the Wisconsin legislature to do so. I also submit that it was error – pardon me – that it was error for the district court to dismiss our failure to warn claim insofar as it related to Dr. Larson, plaintiff's initial implanting surgeon. There are questions of fact as to whether or not an adequate amount of cement would have caused plaintiff's premature failure. Dr. Dearborn said, if you told me that I had to do it, it being used one bag of cement, I would quote unquote say, go find another surgeon. Zimmer's surgical technique guide at the time said absolutely nothing about cement. It didn't even have the word cement in it. As you know, causation is quintessentially a factual issue for the trier of fact to make. And we submit that at this procedural posture where we're entitled to have the evidence viewed in our favor and all reasonable inferences drawn therefrom that it was error for the court to do so. With respect to the second issue where I'm asking for certification, that's on the heating presumption. I believe the district court violated the Erie Doctrine by not according the weight that it should have to the Wisconsin appellate court Turner decision, Tanner decision, where the court said that Wisconsin did apply the heating presumption. The Western District of Wisconsin has twice agreed with the Tanner court. This court in all state said in the absence of Supreme Court prevailing authority. That part of Tanner wasn't about causation. It was about the adequacy of the warning. I agree. We're in causation territory here with this part of the argument. So Tanner is inapplicable. I disagree. I don't say it's inapplicable. But we certainly have to look at it. And I also agree that it is unclear here. There's a dearth of applicable case law here. And that's why I'm asking for this court to certify those two questions. I certainly am not holding the untenable position that Tanner is on all fours. I'm not trying to, you know, make the case something it's not. The exploding battery case where the defect was some prior user of the battery had hammered on it. I do believe that the district court didn't accord it the weight it deserved. But where we have, you know, it's important that this court look pragmatically at what's going on here. This is the second bellwether case in an MDL. There was initially a trial set up for September of 2016 that I believe settled. And so in June 2016, we offered this up as the next one so that the court, you know, would have another trial set up. We did a factual discovery in 35 days. So, you know, this is what, you know, led us up to this point. And while we're here, there's a certain amount of latitude that I would say this court should afford such a second bellwether case in a nation MDL litigation. And that's why I think certification is important. Unless the court has any other questions. How has the patient benefited by having this knowledge? I'm sorry. As opposed to the surgeon. How has the patient, Mr. Jonas, benefited by having this knowledge? Well, if she knew that Zimmer's own expert, who had been their expert for two decades, said that not using too bad to cement might cause it to fail, and probably did cause it to fail, which are his words, not ours, I know he would not have done the surgery. Who would undergo a total knee replacement if they said in four years and six months, we've got to do it all over again? So that's how it would benefit my client, Your Honor. You don't think the information to the surgeon is the critical linchpin? Oh, I think they both are, obviously. So the surgeon makes that decision, doesn't he? Absolutely not. I don't mean on the ultimate decision to have the surgery. I'm talking about the procedure, how it's carried out. Does the surgeon make the decision? Of course. It's his hands, her hands, sure. I understand your point, and I take it. But I do believe here at this procedural posture, and given the circumstances of this case, that I do think reversal is warranted and that certification would be appropriate here. So unless there's any other further questions, I'll be out of time. Thank you. Thank you. Mr. Jones? Thank you, Your Honor. May it please the Court. As the district court recognized, the plaintiff's case here failed for simply lack of evidence. Most basically, and the issue that counsel did not mention, was the lack of any expert testimony at all concerning what actually caused Mr. Joas's knee to fail. The case was fully litigated, and yet plaintiff could offer nothing, no expert testimony about what actually went wrong with the knee and caused it to fail. Well, he wants to bootstrap your expert's opinion since he lost his own and build a case sort of reconfigured around your expert's opinion that two bags of cement was protocol rather than the one that Dr. Larson used. He did. He wants to kind of rebuild his case in that way. The first time we ever saw the theory of inadequate cement two bags versus one was in the plaintiff's response to our summary judgment motion. That's the first time it came up. There are several problems with that, not least of which is that Dr. Dearborn did not actually say or opine on what caused the knee to fail. What he said, what plaintiffs are hanging their hat on is a comment that you'll find on pages 92 and 93 of the supplemental appendix in which Dr. Dearborn says, he's asking himself this question here, do I think that with improved cementing the way I cement that the knee still would have failed at four and a half years? No, I don't think that. That's the causation opinion that they're relying on. Number one, it's not Dr. Dearborn saying what he's saying. It's saying what he's not saying. It's not expressed to a reasonable degree of medical certainty, unlike other testimonies that plaintiffs ask him about, and it doesn't say anything about what actually did cause the knee to fail. So even if you accept that, it's just not there. What Dr. Dearborn said doesn't give a cause for the failure of the knee. Was he asked whether it was inconsistent with the design of the implant to use anything less than two bags of cement? No, he was not. Was he asked if it was a violation of the standard of care to use one instead of two? Yes. If you look at page, I believe it's 81 through 83 of the supplemental appendix, plaintiff's counsel asked him that very question, did Dr. Larson's use of only one bag violate the standard of medical care? And Dr. Dearborn says no. He says, I can't say that. He goes through a list of what he would do, what his preferences are, what his technique is, and if he saw that Dr. Larson was only using one bag, he couldn't make that statement. He'd have to observe multiple surgeries. He'd have to look at post-operative x-rays. And even then, he doesn't say he would have found it to be violating the standard of care. He just says, I would have had a talk with him and say, maybe you want to consider using two bags. So he does not opine that Dr. Larson's use of one bag violated the standard of medical care. And I take it he wasn't asked a variation of that question within the framework of a duty to warn cause of action. He was not. Moreover, even if you accepted Dr. Dearborn's testimony as sufficient to raise the question of causation, you still can't get to plaintiff's failure to warn claim, which is the only claim they have left, because of three additional reasons. Number one, there's no evidence supporting the idea that a manufacturer has a duty to instruct surgeons on cementing technique. There's no evidence whatever from any expert that says that. And, in fact, the only evidence is from Dr. Dearborn and Dr. Larson, both of whom say, no, that's not something we get from manufacturers. That's something we learn in medical school and in our residency and our fellowship. That's not something that we look to manufacturers to tell us. Second, there is no evidence that the instructions that Zimmer gave were actually inadequate. Again, the only evidence here is Dr. Dearborn's testimony that the instructions given by Zimmer were fully adequate and told surgeons enough information about the risks of the product. And third, there's no evidence that different instructions would have actually changed what Dr. Larson did during the surgery. Dr. Larson said, I don't get my surgical technique from manufacturers' brochures or instructions. I base that on my medical training and my 16 years of experience implanting thousands of knees. There's simply nothing there that supports the idea that there's either a duty to warn or a failure to fulfill that duty in this case, or a causative element that links that failure to warn to plaintiff's injuries. One additional point I would comment on, plaintiff's counsel commented about the supposed rapid discovery period here. Discovery in the case in the MDL that he described has been going on for months and years, and plaintiffs as a whole have had many, many months to develop their experts and to find the testimony that was needed in this case. Also, I would note that there was no objection made to the summary judgment on the basis of any inadequate discovery or any lack of material that was needed that should have been provided. With respect to the learned intermediary, we've laid it all out in our brief. I don't believe there's a single state at present that doesn't observe this. There's no reason, and plaintiffs have offered no reason to believe that Wisconsin would not likewise adopt it. The district court correctly adopted it, predicted that, yes. Well, Wisconsin does take a little different view of duty in negligence cases. Apart from the strict product liability 402A context, the general view of duty in Wisconsin is different from other states that have an impact on how this doctrine may or may not be viewed by the state courts. I don't see how, Your Honor, and plaintiffs certainly haven't suggested any reason that it would be different. The fact remains that in a case like this, set aside pharmaceuticals for a moment. In a medical device case, the patient has to go through the doctor. There's no way that a patient can select and implant his own artificial knee. This is not a consumer product. Exactly, Your Honor. The equation may be different under traditional negligence law in Wisconsin. So the cases that have been cited are older traditional negligence cases involving consumer products. I didn't see one that involved a highly technical medical product. The only case plaintiffs cited that involved a medical product at all was the Westfall case, and that involved a suit against the manufacturer of Teflon, and the issue there did not go off on who the warning was to be to, whether it was to be to the doctor or to the patient, but just went off on the fact that there was no information that the manufacturer had that its product, its coating, could actually be dangerous if used in that context, and therefore there was no duty. So the one case the plaintiffs cite that did involve a medical product didn't address the question of who the warning is owed to. Your Honor, unless the Court has further questions, I will simply ask the Court to affirm the district court's decision. All right. Thank you, Mr. Jones. Thank you. I'll be very brief, Your Honor, because I think the Court understands our respective positions. I'd just like to say that I do believe that given this being the second bellwether in an MDL that is just nation, that it would be appropriate to ask the Supreme Court of Wisconsin to chime in here. Thank you so much. All right. Thank you. Thanks to both counsel, all counsel, and the cases taken under advisement.